# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | Cause No. 1:16-cr-271-WTL-DML |
| HONGXING ZHANG, ) | |
| Defendant. ) | |

## ENTRY ON DEFENDANT'S MOTION TO DISMISS

This cause is before the Court on the Defendant's motion to dismiss (Dkt. No. 57). The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion for the following reasons.

## I. INTRODUCTION

Hongxing Zhang is charged in a 21-count Superseding Indictment with wire fraud, identity theft, export-information violations, alleged false statements to a government agency, and money laundering predicated on the underlying wire fraud charges. Specifically, the Government alleges that in his capacity as a pharmacist, Zhang defrauded Dr. H., using false pretenses to induce Dr. H. to write prescriptions for drugs Zhang wanted. The Government alleges that, using prescriptions he obtained through fraud on Dr. H., Zhang procured prescription drugs from, among other places, companies in Canada and Germany, and that in doing so, Zhang made more false representations, indicating to the companies that the prescriptions were legitimate when they were not.

The Government alleges that Zhang imported the drugs from Canada and Germany and subsequently exported them to pharmaceutical companies in China and that the drugs never went

to Dr. H.'s patients because Zhang had fraudulently created the patients' need for the drugs in the first place. Throughout the relevant period, the Government alleges, Zhang repeatedly made use of United States wires to carry out aspects of his fraud scheme.

The Superseding Indictment also alleges that Zhang used the name and date of birth of another person, Y.Z., to carry out separate crimes and that he engaged in such identity fraud at least three times. Further, the Superseding Indictment alleges that Zhang engaged in international money laundering several times, ultimately laundering well over $100,000. Finally, and also in connection with his other crimes, Zhang is alleged to have made false statements, including on customs forms.

## II. DISCUSSION

Zhang moves to dismiss various counts of the Superseding Indictment. Each argument is addressed, in turn, below.

### A. Wire Fraud Counts

**1. Duplicity**

Zhang first argues that the wire fraud counts are duplicitous because more than one offense is charged in a single count. As he notes, a duplicitous indictment creates the possibility of offending the command of the Sixth Amendment that the accused be "informed of the nature and cause of the accusation" and of the Fifth Amendment that he not "be twice put in jeopardy." *United States v. Zeidman*, 540 F.2d 314, 316 (7th Cir. 1976) (quotation and citation omitted). He also points to the possible denial of the clear concurrence of all jurors as to each offense charged as the basis of the conviction and the danger that the jury might find him guilty of some offenses charged in the duplicitous count and not guilty as to others. *See id.*

The Government responds that each wire fraud count charges a single offense carried out through different means. Rather than a count charging separate offenses, the Government argues, the actions alleged in each count constitute a single scheme and single course of conduct.

The Court agrees that the wire fraud counts are not duplicitous. A unitary scheme to defraud can consist of multiple separately chargeable acts, so long as those acts share a close enough nexus that they can be fairly characterized as one scheme. *Zeidman*, 540 F.2d at 317. Because the line between multiple distinct offenses and a single continuing offense is often difficult to draw, the decision must be initially left to the discretion of the prosecution. *United States v. Berardi*, 675 F.2d 894, 898-99 (7th Cir. 1982) (citations omitted).

Here, there is an adequate nexus between the acts that the Government alleges as a unitary scheme. The Government explains that each act taken within an individual count was in support of a single course of conduct for that count and each count was a single scheme with a single goal. Each scheme involved multiple communications. Accordingly, the motion to dismiss on this ground is denied.

### 2. Extraterritorial Application

Next, Zhang argues that the wire fraud statute has no extraterritorial application, making it inapplicable to the conduct in this case. The Supreme Court has laid out a two-step framework for analyzing extraterritoriality issues.

Zhang and the Government agree with regard to the first step: the language of 18 U.S.C. § 1343 does not appear to rebut the presumption against extraterritoriality. Accordingly, the Court must turn to the second step:

> If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus." If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even

if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016).

A wire fraud conviction under 18 U.S.C. § 1343 requires (1) a scheme to defraud; (2) intent to defraud; and (3) use of wires in furtherance of the scheme. *United States v. Leahy*, 464 F.3d 773, 786 (7th Cir. 2006). It is a specific intent crime. *Id.* The intent to defraud requires a "willful act by the defendant with the specific intent to deceive or cheat, usually for the purposes of getting financial gain for one's self or causing financial loss to another." *Id.* (quotation and citation omitted).

The Government's response to Zhang's extraterritoriality argument relies on domestic activities to satisfy these elements:

> Zhang's argument to the contrary largely ignores not only the statute's focus but also the domestic facts at the core of this case. He argues that the "property" at issue is foreign medicine; that the "false statements" were prescriptions presented in Canada and Germany; and that the victims were foreigners. *None of that is correct: in fact, the "property" is a series of domestic prescriptions; key "false statements" were domestic statements made to Dr. H.; and Dr. H. is a domestic victim.* That Zhang benefited down the line from foreign contacts does not make his exploitation of Dr. H. an improper extraterritorial application of § 1343. *RJR Nabisco*, 136 S. Ct. at 2101.
>
> In other words, even if the "focus" of the wire fraud statute is somehow broader than the protection of U.S. wires, this case does not amount to an extraterritorial application of 18 U.S.C. § 1343. Zhang used domestic instrumentalities of communication to effectuate his fraud scheme. His scheme resulted in the procurement of domestic property—prescriptions—by falsehood. And his scheme targeted a domestic victim, Dr. H.

Dkt. No. 60 at 8 (emphasis added).

The Court agrees that, as described by the Government above, the wire fraud charges do not represent an impermissible extraterritorial application of 18 U.S.C. § 1343. Yet in section C of the Government's Response, the Government indicates that Zhang defrauded "at least one

4

victim" and indicates that the "primary victim" was Dr. H. *Id.* at 9. If, indeed, the victim is Dr. H., a doctor in the United States, Zhang's extraterritoriality challenge fails. Moreover, as explained below, the facts as presented do not demonstrate that the foreign pharmacies were additional victims because they were not defrauded. As such, the motion to dismiss on this ground is denied.

### 3. Foreign Pharmacies

Zhang argues that, because the foreign pharmacies got the price they wanted for the products they sold, they were not defrauded. The Government responds that Zhang defrauded at least one victim: Dr. H. The Court agrees that the facts as presented do not indicate that the foreign pharmacies were defrauded of either money or property. The Court finds persuasive the Sixth Circuit's reasoning in *United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014), in which that court reversed the defendant's wire fraud conviction, finding that the use of false information to obtain pills did not defraud the pill distributers when the defendant paid the distributors' asking price and as such did not deprive the distributors. However, the facts as alleged by the Government nonetheless do adequately charge wire fraud, with the property being the prescriptions and the person defrauded being Dr. H. The motion to dismiss the wire fraud counts on this ground is therefore denied.

### 4. Property

Zhang argues that neither Dr. H. nor the foreign pharmacies were deprived of property. As explained above, the Court concurs that the foreign pharmacies were not deprived of property. Accordingly, the question becomes whether the prescriptions that Zhang allegedly lied to obtain from Dr. H. constitute property under the wire fraud statutes. The Court finds that they do.

Here, the property at issue is the prescriptions written by Dr. H, which the Government alleges Zhang lied to Dr. H. to obtain. In *United States v. Eckhardt*, 997 (7th Cir. 1988), the court held that "intangible rights" are not property within the meaning of the wire fraud statute. There, intangible right at issue was the government's right to compute income taxes without obstruction. By contrast, the prescriptions here, rather than being akin to purely regulatory interests of the state, entitle the holder to obtain that which he could not otherwise obtain. As the Government argues, the value of a prescription transcends the value of its tangible qualities. Further, although a license itself may not be property subject to federal criminal jurisdiction, it does not follow that the privileges conveyed by that license are not property, particularly when the alleged victim is the license holder rather than the license grantor. The motion to dismiss on this ground is denied.

### 5. Lenity Does Not Require Dismissal

For the reasons explained above, the Government has sufficiently alleged the property interest at issue, and no extraterritoriality issue exists with the charges as defined above. As applied to the facts of this case, the wire fraud statute is not vague. Accordingly, dismissal is not required on those grounds.

### B. <u>Identity Fraud</u>

### 1. Sufficiency of Indictment

Zhang moves to dismiss Counts Seven through Nine of the Indictment under Federal Rule of Criminal Procedure (7)(c)(1). Federal Rule of Criminal Procedure 7(c)(1) provides that an "indictment or information must [include] a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is legally sufficient if it (1) states all the elements of the crime charged, (2) adequately informs the

6

defendant of the nature of the charges against him, and (3) allows the defendant to assert the judgment as a bar to future prosecutions of the same offense. *United States v. Smith,* 230 F.3d 300, 305 (7th Cir. 2000). An indictment "that 'tracks' the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive." *United States v. White,* 610 F.3d 956, 958-59 (7th Cir. 2010); *see also United States v. Resendiz-Ponce,* 549 U.S. 102, 109 (2007) (explaining that an indictment "parroting the language of a federal criminal statute" is sufficient so long as the crime is not one that must be charged with greater specificity).

Count Seven of the Superseding Indictment alleges that on May 25, 2014, Zhang used Y.Z.'s name and date of birth in connection with another crime without Y.Z.'s authorization. Likewise, Counts Eight and Nine provide the initials of the alleged victim, the means of identification, and the dates that the conduct was alleged to have occurred. In making the determination whether a defendant is sufficiently apprised of the charges, the court is not limited to considering only the indictment; the information may be provided to the defendant through "some other satisfactory form." *United States v. Hernandez,* 330 F.3d 964, 975 (7th Cir. 2003) (holding that a bill of particulars was not required to produce the names of minor individuals allegedly part of a criminal enterprise where "the names of the minors were available through discovery"). Here, the Government also points to the discovery in Zhang's possession. The information in each count, coupled with the discovery provided, is sufficient to put Zhang on notice. The motion to dismiss on this ground is denied.

The Government acknowledges that Zhang's contention regarding the incorrect citation of Sales-Receipt fraud in the Superseding Indictment is correct. The text of the Superseding

7

Indictment specifies that Forgery is the relevant subsection, although subsection (b) (fraudulent sale document) rather than subsection (d) (forgery) of Indiana Stat. Ann. 35-43-5-2 is cited. Zhang fails to allege that he would be prejudiced by any correction. The Court finds that the correction of the scrivener's error is warranted and would not prejudice Zhang.

### 2. Violation of § 1028(a)(7)

Zhang also argues that Counts Seven though Nine fail to allege criminal violations. Specifically, he argues that he did not "use" the name and birthdate of alleged victim Y.Z. within the meaning of 18 U.S.C. § 1028. The non-binding cases cited by Zhang involve application of § 1028(A), the aggravated identify theft statute. As Zhang argues, § 1028 and § 1028(A) share many statutory definitions. However, the Seventh Circuit has noted the difference between identity fraud under § 1028 and identity theft under § 1028A. *See United States v. Spears*, 729 F.3d 753 (7th Cir. 2013).

Starting with the language of the statute, the Court looks to the ordinary or natural meaning of the word. *Bailey v. United States*, 516 U.S. 137, 144 (1995), superseded by statute on other grounds, *Welch v. United States*, 136 S. Ct. 1257 (2016). "The word 'use' in the statute must be given its 'ordinary or natural' meaning, a meaning variously defined as '[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'" *Bailey*, 516 U.S. at 144.

Under this definition, the acts alleged by the Government—Zhang's causing prescriptions to be filled based on Y.Z.'s identifying information and transferring Y.Z.'s name and date of birth on those prescriptions to obtain pharmaceutical drugs without Y.Z.'s knowledge or consent—constitutes use. The motion to dismiss on this ground is denied.

### C. Money Laundering

Zhang also argues that Counts Ten through Sixteen charging him with money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) are fatally flawed. Specifically, Zhang argues that the Government has erred by charging as promotion money laundering the payments that Zhang allegedly made to acquire the medicines from foreign suppliers that are an integral part of the underlying wire fraud. Counts Ten through Sixteen of the Superseding Indictment list wire fraud as the specified unlawful activity for each count.

The relevant language from the money laundering statute is as follows:

(a)(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States--
(A) with the intent to promote the carrying on of specified unlawful activity; . . .

shall be sentenced. . . .

18 U.S.C.A. § 1956(a)(2). As the Seventh Circuit has explained,

"the promotion element [of the money laundering statute] can be met by 'transactions that promote the continued prosperity of the underlying offense,' i.e., that at least some activities that are part and parcel of the underlying offense can be considered to promote the carrying on of the unlawful activity." [*United States v. Malone*,] 484 F.3d [916,] 921 [7th Cir. 2007] (quoting *United States v. Febus,* 218 F.3d 784, 790 (7th Cir. 2000)). The absence of a "proceeds" requirement in section 1956(a)(2)(A) reflects that Congress decided to prohibit any funds transfer out of the country that promotes the carrying on of certain unlawful activity.

*United States v. Krasinski*, 545 F.3d 546, 551 (7th Cir. 2008).

Accordingly, here the Court must determine whether the payment of the funds to the foreign pharmacies promoted Zhang's alleged wire fraud—defined by the Government as his obtaining the prescriptions. As Zhang argues, the Government has not alleged that Zhang paid Dr. H. for those prescriptions. Here, the seven transfers of funds alleged by the Government went

9

only to pay for the medicine that Zhang allegedly was obtaining from the foreign pharmacies. By paying the funds to the foreign pharmacies to obtain the prescription drugs, Zhang was not promoting the underlying wire fraud offense: making false statements to Dr. H. to obtain prescriptions from her. That alleged fraud would have been complete when the prescription was obtained. As such, Counts Sixteen through Twenty of the Superseding Indictment must be **DISMISSED**.

### D. False Statements

The Government alleges that on February 8, 2016, Zhang attempted to export two packages and that on the customs declaration forms he made materially false assertions: (1) the shipper was Y.Z., (2) the package contained vitamins, and (3) the value of the vitamins was $30.00. In fact, the Government alleges, Zhang himself attempted to ship the packages; the contents were pharmaceutical drugs, not vitamins; and those drugs were valued well in excess of $30.00. The Government alleges that U.S. Customs relied on that false information.

Zhang also argues that Counts Twenty and Twenty-One, charging false statements, should be dismissed. He argues that, because the value of the each mailed package was under $1000, he was not required to file an Electronic Expert Information form through the Automated Expert System.

18 U.SC. § 1001 "covers 'any' false statement—that is, a false statement 'of whatever kind.'" *Brogan v. United States*, 522 U.S. 398, 400 (1998) (quoting *United States v. Gonzales*, 520 U.S. 1 (1997)). Violations of § 1001 require proof that a defendant: (1) made a statement; (2) that was false; (3) that was material; (4) that was made knowingly and willingly; and (5) that concerned a matter within the jurisdiction of a federal department or agency. *United States v. Ringer*, 300 F.3d 788, 791 (7th Cir. 2002).

Materiality for § 1001 purposes turns on whether the statement "[has] a natural tendency to influence, or be capable of influencing the decision of the decisionmaking body to which it was addressed." *United States v. Turner*, 551 F.3d 657, 663 (7th Cir. 2008) (quotation and citation omitted). The agency need not rely on the false statement or actually be influenced; instead, it must be shown only that the statement had the capability of influencing a determination that was to be made. *United States v. Di Fonzo*, 603 F.2d 1260, 1266 (7th Cir. 1979) (citation omitted).

Counts Twenty and Twenty-One do not fail to state an offense, and the motion to dismiss on this ground is denied.

### III.  CONCLUSION

For the foregoing reasons, the Defendant's motion (Dkt. No. 57) is **GRANTED IN PART AND DENIED IN PART**. Counts Ten through Sixteen of the Superseding Indictment are dismissed.

**SO ORDERED: 9/25/17**

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification